Staples, J.
This is an appeal from a decree of the District court at Fredericksburg, reversing a decree of the Circuit court of Hanover. The bill was filed in the name of the appellee, a person of unsound mind, suing by her next friend, against the appellant, her former committee. The object of the suit was a settlement of the accounts of the latter, and a decree for such sum as might appear to be due.
The first ground of objection taken in the argument here, is that the suit was improperly instituted in the name of the appellee ; inasmuch as a lunatic is incompetent to maintain an action, except through the intervention of a committee. The bill was filed in January 1867—a decree for an account i'endered—the account taken—exceptions filed and considered—and in October 1868, a final decree rendered. During all these proceedings this objection was never suggested, nor was it mentioned in the petition for an appeal to the District court; and now, after the lapse of nearly four years, it is, for the first time, made in this court. Every rule of convenience requires that an objection for want of parties should be made at an early stage of the proceedings, that the expense and delay of a fruitless investigation and hearing may be avoided. It is true, that it may in some cases be taken for the first time in an appellate court; but only where it is palpable that a necessary party is wanting, in whose absence gross injustice may be done, or no final adjudication of the matters in controversy can be made. Had this objection been made *716 in the Circuit court, that court might have entered an order for the cause to proceed in the name of the appellee, by some fit and proper person as her next friend, if the one now named in the record was found,, i>Pon investigation, to be unqualified; or the court might have given direction for the appointment of a committee, and the amendment of the bill by making-such committee a party to the suit as co-plaintiff or defendant. The rule relied on by the appellant, is for the security and protection of the lunatic against the voluntary and officious interference of persons unskilled in the conduct and management of suits, or unfit to be trusted with the funds which may be the subject of a recovery. It is also for the protection of the defendant, who might be held responsible a second time at the suit of the committee when appointed. So far as the appellee is concerned, her estate will be made perfectly secure by an order for the investment of the fund under the supervision of the court, or for the appointment of a committee, to whom it can be paid. And as to the appellant, he had the right to waive a rule intended for his advantage, as in this case he will be held to have done, by his silence and acquiescence. But whether he has or not, there can be no question of his perfect security under the decree of the court against a demand from any quarter.
But if the objection had been taken in limine, it ought not to have been sustained. It is clear when there is a. committee, that every suit respecting the person or estate of the lunatic must be instituted in his name. But suppose there is no committee, or, as in this case, the demand! is asserted against a committee whose powers have been revoked, and who is charged with violating his trust and converting the estate to his own use. Is the lunatic •without remedy ? It is said that another committee should be appointed. It may be that no one can be found willing to accept the office, or that the condition of the estate, *717 or the conduct of the adverse party, requires the utmost promptness in the institution of legal proceedings. Prior to the rovisal of 1819, the laws authorized the appointment of committees only for insane persons ordered to be confined in the asylum ; and even then the power’s of such committees extended only to suits for the collection of debts. It appears to have been the practice in some instances for the courts of chancery to appoint committees for persons non compos mentis, who were not inmates of the asylum; but the committees were regarded as mere commissioners of the court, removable at its pleasure, and were in no manner authorized to sue or be sued in respect to the lunatic or his estate. If the proposition now asserted be correct, persons of unsound mind not confined in an asylum were utterly without redress in the courts of Virginia. It was suggested, however, that in this class of cases an information might be •filed in the name of the attorney general, with some responsible person named as relator. This practice has been sometimes pursued in England, because there the custody and the care of the persons and estates of lunatics devolve upon the lord chancellor in virtue of his general power as holding the great seal and keeper of the king’s conscience. And the attorney general, as the law officer of the crown, is authorized to institute suits in their behalf in the form of informations. Here the custody, control and management of the estates of lunatics are regulated by statute, and devolves upon persons appointed by the county courts. It is clear, therefore, there is no analogy between the practice pursued here and that followed in the English courts. In Bolling v. Turner, 6 Rand. 584, the action was against a committee appointed by a chancellor having the management of the lunatic’s estate as a commissioner and receiver of the court; and it was held the action could not be maintained. Judge Brooke said the error in bringing the action was injiot distinguishing it from an action against *718 the committee of a lunatic appointed under the statute, the lunatic is sent to the asylum, and is treated by the statute as “ dviliter mortuusand the committee as executor, and responsible in like manner. According this' view, under former laws the legal incapacity of a lunatic to sue and be sued, was the result of the commission of lunacy and the confinement in an asylum. If under the present statutes every person who is adjudged a lunatic, and for whom a committee has been appointed, is to be regarded as “ dviliter mortuus,” it would not follow that a person whose committee has been removed from office and the commission superseded, is also to be regarded as “ dviliter mortuus,” and legally incompetent to sue. In all such cases, or wherever the interests of the committee clash with those of the lunatic, or when no committee has ever been appointed, the lunatic should be permitted to institute a suit in his or her own name, with some responsible person named as next friend and approved by the court. This rule is a just and beneficent one, and has the sanction of a respectable and imposing weight of authority. Noreom v. Rogers, 1 C. E. Green, New J. R. 484; 1 Dan. Ch. Prac. last Ed. page 83; Shelford on Lunacy.
It is also insisted, that the Circuit court erred in applying the scale of • depreciation to the disbursements made by the appellant in Confederate currency, for the support of the appellee. The appellant upon his qualification in 1836, received the estate of the appellee, consisting principally of money. "What disposition ho made of it does not appear. There is not the slightest pretext for saying that he invested it. The presumption is, that he appropriated, and thus became the borrower of, the fund. In January 1865, he expended for the appellee five hundred dollars, and on the 30th day of March thereafter he expended eight hundred dollars in Confederate money. He now gravely insists, that in his settlement he is justly entitled to a credit for the *719 nominal amount of what was so expended. He declares that he had no alternative but to call iu the money of the appellee, or let her starve and go naked. This pretension is not sustained by the record. It "was his own money that was expended, and not that of the appellee. The proposition that the appellant should now be permitted to claim this disbursement as a valid payment to its nominal amount, of a debt contracted in United States coin or its equivalent, is abhorrent to all ideas of justice, and cannot for a moment be entertained. He is entitled to the value of what was so advanced, and he is entitled to nothing more. The act of March 3d, 1866, relied on by his counsel, has no application to the case. The provision in question applies to payments in full, or in part, of an amount payable under a contract, and accepted by a creditor competent to understand his rights and obligations.
It was insisted also, that the commuted value of the Confederate currency paid out by the appellant furnishes a very inadequate compensation for the support and maintenance of the appellee during the war. It is to be. observed, however, that the appellant does not claim that he supplied the appellee with food and lodging in his own family. Neither in his answer, nor by his testimony, does he assert any such pretension. Before the war he paid others for performing that duty, and the presumption is he continued so to do, until his powers were revoked. He can therefore only claim to be reimbursed the amount and value of his expenditures in Confederate treasury notes. However small it may be when reduced to United States currency, it must constitute the measure of his remuneration and his recovery.
The appellant also excepted in the court below, to the refusal of the commissioner to allow him commission upon the sums annually charged to him for interest accruing upon the balances iu his hands. This exception was well taken, and ought to have been sustained. *720 If the appellant is to be held responsible, as though he had invested the fund, he is entitled to the commission he would have received had he actually made such investment. In this respect there can be no substantial difference between the fund accounted for as principal and that accounted for as interest. The appellant, in his petition to this court for an appeal, makes no complaint of the decree of the District court upon this point. Bnder a fair and just construction of that decree, be would be entitled to, and no doubt would have been allowed, his commission upon the interest with which he is chargeable.
The appellant also claimed in the Circuit court, that his accounts as committee should be stated upon the principles applicable to executorial accounts, rather than those of guardians. By the decree of the District court, it is directed “that the transactions of the committee shall be settled and stated upon the principles governing the accounts of guardians, and not otherwise ; that the receipts and disbursements made by him shall be scaled as of the several dates when they were received or made, except that 'interest shall not be computed upon interest.” Without undertaking now to decide whether, as a general principle, the rules governing in the settlement of guardians’ accounts shall be applied to the transactions of ■committees for insane persons, it is sufficient to say that, under all the circumstances of this case, it is proper that the appellant should be exempt from the payment of compound interest. As under the decree of the District court the appellant is exempt from this liability, he has no jiist cause of complaint in this particular. The claim for compound interest being disallowed, there can be no valid objection that the account in other respects is •adjusted and stated upon the principles governing the •accounts of guardians, as directed by the decree of this •court in the case of Cunningham v. Cunningham, 4 Gratt. 43.
*721 On these grounds, I am of opinion there is no error in the decree of the District court, and that the same should be affirmed.
The other judges concurred in the opinion of Staples, J.
Decree of the District court affirmed.